No. 25,677.

ADA BOLLINGER, *Appellee*, v. CITY OF HILL CITY, *Appellant*.

SYLLABUS BY THE COURT.

1. FACTORY ACT—*Municipal Electric-light Plant Within Purview of Factory Act.* A municipal electric-light plant wherein electric current is manufactured by means of dynamos and other machinery, which current is conducted by wires to the customers of the municipality and to whom the municipality sells the electricity, is within the purview of the factory act.

2. SAME—*Person Laboring in Electric-light Plant Within Protection of the Factory Act.* A person laboring in a municipal electric-light plant, as above stated, although not an employee of the municipality, is within the protection of the factory act.

3. SAME—*Evidence Supports Verdict and Judgment.* The evidence examined, and held sufficient to support the findings and verdict of the jury and judgment of the court.

4. SAME—*Verdict Not Excessive.* A verdict of $10,000 considered, and held, under all the circumstances stated in the opinion, not to be excessive.

5. SAME. Various assignments of error considered, and held not to be well founded.

Appeal from Graham district court; CHARLES I. SPARKS, judge. Opinion filed July 5, 1924. Affirmed.

*W. L. Sayers, J. S. Parker,* both of Hill City, *Robert Stone, George T. Mc-Dermott, Robert L. Webb,* and *Beryl R. Johnson,* all of Topeka, for the appellant.

*J. K. Cubbison, William G. Holt,* and *C. M. Kackley,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one by the widow, on behalf of herself and three minor children, to recover for the death of her husband, which resulted from an accident in the municipal electric-light plant of the defendant. Trial to a jury resulted in a verdict for $10,000 against the defendant city, and it appeals.

The principal controversy arises over the question as to whether the deceased was "employed" or "laboring" at the electric-light plant.

The testimony showed that the deceased, D. A. Bollinger, had been operating a threshing machine; that the assistant superintendent of the light plant expected to resign in about two weeks; that the superintendent of the plant took Bollinger to a committee

of the city council; that his employment was discussed; that he went to the light plant and remained for several hours on three successive days; that on the third day (Tuesday) he arrived about eight o'clock in the morning; that he was there to learn the work while he was trying to get the position, or waiting for one; that about noon the superintendent of the plant went to lunch, leaving Bollinger alone at the plant. The superintendent, among other things, testified, in substance:

"Bollinger had been around the plant two days and was hurt the third day. There was talk of employing him. I made recommendation for the employment of Bollinger and they took my recommendation as superintendent. He was working and trying to learn. He was down there to learn the work while he was trying to get the job. On the day of the accident I left at noon and left Bollinger in charge of the plant. There was no one else there. I knew he was going to stay there. I told him to call me when anything went wrong."

While the superintendent was gone at noon a stranger named Gibson stopped at the plant and saw the deceased pouring some oil in the self-oiler on the engine. He had some waste in his hand. As Gibson was about to leave the plant he heard a noise, and turning saw that the deceased was caught in the revolving shaft on the side of the engine. His sleeve had been caught on an unguarded set screw on the revolving shaft. Gibson summoned help; the engine was stopped and Bollinger taken out. The sleeve of Bollinger's jacket and his arm were wrapped around the shaft. He was so severely injured that he died six days after the accident, his arm in the meantime having been amputated. The jury was asked and answered special questions as follows:

"Q. 1. If you find Bollinger was performing labor of any kind at the plant at the time of his injury, was he doing so at his own volition? A. No.

"Q. 2. Did anyone ask or invite Bollinger to work or labor in the plant, and, if so, who asked him? A. By superintendent and water and light committee.

"Q. 3. Did the mayor or any of the councilmen of defendant invite Bollinger to go into the plant? A. Yes.

"Q. 4. Did the mayor or any of the councilmen know prior to the injury that Bollinger was staying in or around the plant? A. Yes.

"Q. 5. Do you find that the clothing of deceased was caught in the set screw in the collar described in the petition of plaintiff? A. Yes.

"Q. 6. Was it practicable to safeguard the set screw, collar and shaft so as to have prevented or avoided the injury to deceased? A. Yes."

It is contended by the defendant that Bollinger was not "employed" or "laboring" in the "manufacturing establishment" of

the defendant within the meaning of the factory act; that he was a mere volunteer; that he was there of his own volition.

Section 44-105 of the Revised Statutes of 1923 in part reads:

"If any person employed or laboring in any manufacturing establishment shall be killed or injured in any case wherein the absence of any of the safeguards or precautions required by the act shall directly contribute to such death or injury, the personal representative of the person so killed, or the person himself in case of injury only, may maintain an action against the person owning or operating such manufacturing establishment for the recovery of all proper damages."

Section 44-104 in part reads:

"All vats, pans, saws, planers, cog gearing, belting, shafting, set screws and machinery of every description used in a manufacturing establishment shall, where practicable, be properly and safely guarded, for the purpose of preventing or avoiding the death of or injury to the persons employed or laboring in any such establishment; and it is hereby made the duty of all persons owning or operating manufacturing establishments to provide and keep the same furnished with safeguards as herein specified."

It cannot be said Bollinger was a trespasser. He was invited by the superintendent to take charge of the plant during the noon hour. Whether or not, under the circumstances, he was employed or laboring in the plant was a question of fact for the jury.

The electric-light plant of the defendant comes within the purview of the factory act. It was owned, maintained and operated by the defendant city. Therein was manufactured electric current by means of dynamos and other machinery. The current was conducted by wires to its customers, to whom it was sold.

A somewhat similar question was considered in *Pack v. Grimes*, 107 Kan. 704, 193 Pac. 330. There the defendants were engaged in the business of converting rough stones into tombstones and monuments. The plaintiff was sent by a transfer company to move some tombstones and monuments to the cemetery, and while assisting in the work, in turning a cogwheel the plaintiff's finger was caught and cut off. He was allowed to recover. It was said:

"A person laboring in such an establishment, although not an employee of the proprietors thereof, is within the protection of the factory act." (Syl.)

In the opinion it was said:

"There is a contention that as plaintiff was not an employee of defendants he was not entitled to the protection of the act. This protection is given not only to employees, but it is also extended to other persons working in the establishment. (Gen. Stat. 1915, § 5890; R. S. 44-105.) The scope of the

The State, *ex rel.*, v. Besson.

protection was considered in *Caspar v. Lewin,* supra, wherein it was said: 'The statute is a factory act and an employers' liability act combined. It bears internal evidence that the employers' liability acts of other states had been studied. They are usually drawn in favor of "an employee," and consequently are held to exclude employees of subcontractors. To meet this defect the protection of the act was extended not only to persons employed, but also to persons laboring, in a manufacturing establishment. The staple employers' liability act, however, expressly limits its application to "an employee who at the time of the injury is in the exercise of due care." (Laws Colo. 1893, ch. 77; Acts Ind. 1893, ch. 130; Acts Mass. 1887, ch. 270; Laws N. Y. 1902, ch. 600.) The omission of any such restriction from the Kansas law appears to have been deliberate and intentional.' (p. 629.)" (p. 706.)

It is contended that the verdict was excessive. The evidence showed that the deceased was about twenty-six years of age; that he had earned as high as $7 per day. Under all the circumstances we are unable to say that the verdict was excessive. Other questions need not be discussed. The record presents no reversible error.

The judgment is affirmed.

MARSHALL, J., dissenting.

DAWSON, J., not sitting.